IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **JIM MOCK AND ANN MOCK** | * |
| Plaintiffs, | * |
| v. | * Case Number: 2:06-cv-00395-MH |
| **CHANDELEUR HOMES, INC.;** **CHAMPION ENTERPRISES, INC.** **CHAMPION HOME BUILDERS, CO.,** **CHAMPION HOMES OF BOAZ, INC.,** **IRONWOOD HOMES OF DOTHAN,** and Fictitious Defendants "A", "B", and "C", whether singular or plural, are those other persons, firms, corporations, or other entities whose wrongful conduct caused or contributed to cause the injuries and damages to the Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time, but will be substituted by amendment when ascertained, | * |
| Defendants. | * |

## PLAINTIFFS' FIRST AMENDMENT TO COMPLAINT

### PARTIES

1. Plaintiff Jim Mock is over the age of nineteen (19) and is a resident of Dale County, Alabama.

2. Plaintiff Ann Mock Margaret Allen is over the age of nineteen (19) and is a resident of Dale County, Alabama.


EXHIBIT A

3. Defendant Chandeleur Homes, Inc. ("Chandeleur") upon information and belief is an Alabama corporation, who does business by agent in Dale County, Alabama.

4. Defendant Champion Enterprises, Inc. ("Champion") upon information and belief is a Michigan corporation, who does business by agent in Dale County, Alabama.

5. Defendant Champion Home Builders Co., Inc. ("Champion Home Builders") upon information and belief is a Michigan corporation, who does business by agent in Dale County, Alabama.

6. Defendant Champion Homes of Boaz, Inc. ("Champion Homes") upon information and belief is a Michigan corporation, who does business by agent in Dale County, Alabama.

7. Fictitious Defendants "A," "B," and "C," whether singular or plural, are those other persons, firms, corporations, or other entities whose wrongful conduct caused or contributed to cause the injuries and damages to Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time, but will be substituted by amendment when ascertained.

## BACKGROUND FACTS

8. On or about March 30, 2000, the Director, Manufactured Housing and Standards Division, Office of Consumer and Regulatory Affairs, Room 9156, Department of Housing and Urban Development (hereinafter the "Department") published a proposed waiver to 24 CFR 3280.504 of the Manufactured Home Construction and Safety Standards on March 30, 2000 (65FR 17110).

9. The proposed waiver was issued in response to information received from manufacturers and certain State Administrative Agencies (SAAs) in southeastern States concerning an increase in the number and severity of consumer complaints caused primarily by moisture build-up and condensation in homes located in the south. At that time, § 3280.504 of the Standards did not distinguish among climates for requirements for condensation control and installation of vapor barriers.[1] Thus, for example, the Standards did not separately address homes placed in humid and fringe environments or climates, which are predominantly located in the southeastern part of the United States. In these climates, it was determined that it may be beneficial to prevent the outside, moisture-laden air from entering through the warm (exterior) side of the home's exterior wall and condensing and collecting on the cold (living space or interior) side of the wall assembly. One means of preventing moisture from entering the exterior wall cavity from the outside, would be to install a vapor retarder on the warm or exterior side of the wall instead of on the interior or living space side of the exterior wall.

10. The interior surface of the exterior wall should also then need to be constructed of a permeable material. This would permit any moisture-laden air that may have entered the wall cavity through a discontinuity in the exterior vapor retarder to be dissipated through the interior permeable material. In such cases, use of vapor retarder paints, vinyl-covered gypsum wallboard, or other

---

[1] The term ''vapor barrier'' is now commonly referred to as a ''vapor retarder''. Accordingly, the term ''vapor retarder'' will be used in all subsequent references throughout the text of this waiver.

impermeable materials or finishes on the interior side of exterior walls could be detrimental, because they would trap moisture within the wall.

11. HUD in fact issued a waiver that applied to the first of the alternatives available under § 3280.504(b), the then current condensation control and vapor barrier installation requirements for exterior walls in humid and fringe climates. Specifically, this waiver allowed manufacturers of homes for humid and fringe climates to install the vapor retarder on the exterior side, rather than the interior or living space side, of the exterior wall, provided: (1) The exterior side of the exterior wall is constructed with a vapor retarder or exterior covering and sheathing that has a permeance not greater than 1.0 perm; and (2) the interior finish and interior wall panels are designed with a 5 perm or higher rating. The waiver also required manufacturers to add a statement and a map to the data plate indicating that the home is only suitable for installation in humid and fringe climates (the map designated the acceptable locations for which the waiver is applicable).

12. The waiver that was urged by many manufacturers in the industry and approved by HUD stated: **§ 3280.504 Condensation control and installation of vapor retarders:** (4) Homes manufactured to be sited in "humid climates" or "fringe climates" as shown on the Humid and Fringe Climate Map in this paragraph shall be permitted to have a vapor retarder specified in paragraph (b)(1) of this section installed on the exterior side of the wall insulation or be constructed with an external covering and sheathing with a combined permeance

4

of not greater than 1.0 perm, provided the interior finish and interior wall panel materials have a combined permeance of not less than 5.0 perm.

13. The Humid and Fringe Climate Map stated that "following areas of local governments (counties or similar areas, unless otherwise specified), listed by State are deemed to be within the humid and fringe climate areas shown on the Humid and Fringe Climate Map in paragraph (b)(4) of this section, and the vapor retarder specified in paragraph (b)(4) of this section may be applied to homes built to be sited within these jurisdictions":

**Alabama** - Baldwin, Barbour, Bullock, Bulter, Chootaw, Clarke, Cofee, Conecuh, Covington, Crenshaw, Dale, Escambia, Geneva, Henry, Houston, Lowndes, Marengo, Mobile, Monroe, Montgomery, Pike, Washington, Wilcox.
**Florida** - All counties and locations within the State of Florida.
**Georgia** - Appling, Atkinson, Bacon, Baker, Ben Hill, Berrien, Brantley, Brooks, Bryan, Calhoun, Camden, Charlton, Chatham, Clay, Clinch, Coffee, Colquitt, Cook, Crisp, Decatur, Dougherty, Early, Echols, Effingham, Evans, Glynn, Wayne, Grady, Irwin, Jeff Davis, Lanier, Lee, Liberty, Long, Lowndes, McIntosh, Miller, Mitchell, Pierce, Quitman, Randolph, Seminole, Tattnall, Terrell, Thomas, Tift, Turner, Ware, Worth.
**Louisiana**
All counties and locations within the State of Louisiana.
**Mississippi**
Adams, Amite, Clairbourne, Clarke, Copiah, Covington, Forrest, Franklin, George, Greene, Hancock, Harrison, Hinds, Issaquena, Jackson, Jasper, Jefferson, Jefferson Davis, Jones, Lamar, Lawrence, Lincoln, Pearl River, Perry, Pike, Rankin, Simpson, Smith, Stone, Walthall, Warren, Wayne, Wilkinson.
**North Carolina**
Brunswick, Carteret, Columbus, New Hanover, Onslow, Pender.
**South Carolina**
Jasper, Beaufort, Colleton, Dorchester, Charleston, Berkeley, Georgetown, Horry.
**Texas** Anderson, Angelina, Aransas, Atacosa, Austin, Bastrop, Bee, Bexar, Brazoria, Brazos, Brooks, Burleson, Caldwell, Calhoun, Cameron, Camp, Cass, Chambers, Cherokee, Colorado, Comal, De Witt, Dimmit, Duval, Falls, Fayette, Fort Bend, Franklin, Freestone, Frio, Gavelston, Goliad, Gonzales, Gregg, Grimes, Guadalupe, Hardin, Harris, Harrison, Hays, Henderson, Hidalgo, Hopkins, Houston, Jackson, Jasper, Jefferson,

>Jim Hogg, Jim Wells, Karnes, Kaufman, Kennedy, Kinney, Kleberg, La Salle, Lavaca, Lee, Leon, Liberty, Limestone, Live Oak, Madison, Marion, Matagorda, Maverick, McMullen, Medina, Milam, Montgomery, Morris, Nacogdoches, Navarro, Newton, Nueces, Orange, Panola, Polk, Rains, Refugion, Robertson, Rusk, Sabine, San Augustine, San Jacinto, San Patricio, Shelby, Smith, Starr, Titus, Travis, Trinity, Tyler, Upshur, Uvalde, Val Verde, Van Zandt, Victoria, Walker, Waller, Washington, Webb, Wharton, Willacy, Williamson, Wilson, Wood, Zapata, Zavala.

These respective Counties shall hereinafter be referred to as the "Gulf Coast Region."

14. As the acting Director of Product Engineering for Fleetwood Homes stated in commenting to HUD on the proposed waiver:

>[t]o be able to put the vapor barrier on the exterior side (warm side) of the wall in hot, humid climates is very necessary to properly handle potential moisture problems... [w]ithout these exceptions the vapor barrier will remain on the inside in the hot, humid climate and moisture will be trapped in the home."

(Comments by William Farish, P.E. in a letter dated January 17, 2005, to the Department of Housing and Urban Development).

15. The manufactured homes designed and manufactured by Defendants, including the manufactured home purchased by Plaintiffs, have an improper design and construction of exterior walls in violation of HUD Manufactured Home Construction and Safety Standards as stated above. The defect existed at the time of sale and Plaintiffs were provided with a written manufacturer warranty that expressly warranted that the home was free from defect.

16. Defendants have known of the defect in the design and manufacturer of homes sold in the respective State and Counties indicated above since at least the mid 1990's and actually lobbied HUD to allow a waiver of the HUD Code because of it in the late 1990's. Despite lobbying for the waiver and actually obtaining it in 2001, Defendants failed to take advantage of the

6

waiver HUD agreed was required. Defendants disingenuously allege that it is impracticable to comply with the waiver. Regardless, Defendants chose to sell homes to consumers in the "Gulf Coast" region without informing them of this known defect and thus chose profit over conscience.

17. Because of the design defect, moisture condensation will become trapped within the walls and result in "sweating walls" - a condition wherein water will begin to seep out of openings that may exist in the wall like the screw holes for a smoke detector or nail holes for a picture hanger. The defect results in "soft walls" throughout the home because the moisture problems associated with this design defect literally make it possible to poke a finger through the gypsum wallboard a/k/a sheetrock in the home. Black mold and various other types of fungal growth will appear as a result of this defect. The home is rendered worthless. Because this phenomenon occurs in the Gulf Coast Region, this condition is known to some within the industry as "Gulf Coast Syndrome."

18. Any and all complaints to Defendants have resulted in inadequate relief and despite a reasonable opportunity and repeated complaints by countless individuals, Defendants merely at most offer to replace the gypsum wallboard on occasion. This does not remedy the cause of the problem as the new gypsum wallboard will deteriorate in the same manner as the replaced gypsum wallboard did. Defendants never inform the consumer of the known defect and fail to offer a full refund of the purchase price.

19. Defendant Champion is the parent corporation and/or alter ego of Defendant Chandeleur Homes, Inc. Defendants manufactured a manufactured home, which the Plaintiffs purchased in July of 2004.

20. As part of the purchase price, Defendants made a written express warranty to the Plaintiffs. Defendants further warranted that any defects in the materials or workmanship in the home, which they were given notice of within the warranty period, would be repaired or remedied at no cost to the Plaintiffs.

21. The manufactured home manufactured by Defendants failed to perform, failed to serve as a suitable place of residence, and failed in its intended purpose.

22. Subsequent to the failure of the manufactured home and notice by the Plaintiffs to Defendants of such failure, Defendants have failed to effectuate all repairs to the manufactured home. As such, the manufactured home continues to deteriorate structurally.

23. Defendants have failed to honor the warranty or repair in that the manufactured home purchased was not fit for its intended use, was not merchantable at the date of the purchase and has continued to not be fit for its particular purpose, not withstanding efforts to repair the structure by Defendants.

24. Pursuant to Code of Alabama, 1975 § 7-2-607(3), Plaintiffs have given the Defendants notice of Plaintiffs' breach of warranty claim prior to bringing this suit.

## COUNT ONE
## MAGNUSON MOSS WARRANTY ACT
## 15 U.S.C. § 2301, et seq.

25. Plaintiffs incorporate by reference all of the preceding paragraphs.

26. At the time of the manufacture, Defendants were merchants, Defendants expressly and/or impliedly warranted that the manufactured home would be merchantable and/or fit for the ordinary purposes for which it was to be used and did expressly warrant that the manufactured home was expressly fit, designed, and built as directed by Plaintiffs, and that the manufactured home was free from defects in materials and workmanship or any defects would be repaired or replaced under the warranty.

27. The manufactured home, as delivered, was not free from defects in materials or workmanship.

28. Defendants have failed or refused to correct the defects in the manufactured home and/or the warranty has failed in its essential purpose causing Plaintiffs to suffer injury and damages.

29. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been proximately damaged as follows: the defects in the manufactured home have substantially and severely impaired its use; the home is of decreased or lesser value than represented when purchased; Plaintiffs have suffered mental anguish and emotional distress, anxiety, embarrassment, anger, fear, frustration, disappointment, worry, annoyance, inconvenience; Plaintiffs will be caused to expend money in attempts to have the respective manufactured

home repaired; and Plaintiffs have been subject to mold resulting from the defects.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as a jury may award, and their costs, as well as reasonable attorney fees as allowed under 15 U.S.C. § 2301, et seq.

## COUNT TWO
## BREACH OF EXPRESS WARRANTY

30. Plaintiffs incorporate by reference all of the preceding paragraphs.

31. Defendants expressly warranted that the manufactured home would be merchantable and/or fit for the ordinary purposes for which it was to be used and did expressly warrant that the manufactured home was expressly fit, designed, and built as directed by Plaintiffs, and that the manufactured home was free from defects in materials and workmanship or any defects would be repaired or replaced under the warranty.

32. The manufactured home, as delivered, was not free from defects in materials or workmanship.

33. Defendants have failed or refused to correct the defects in the manufactured home and/or the warranty has failed in its essential purpose causing Plaintiffs to suffer injury and damages.

34. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been proximately damaged as set forth in Paragraph 29.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as a jury may award, and their costs.

10

## COUNT THREE
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

35. Plaintiffs incorporate by reference all of the preceding paragraphs.

36. Defendants breached the implied warranty in that the manufactured home was not merchantable, was not fit for ordinary purposes, and was not built as represented or ordered.

37. Plaintiffs provided notice to Defendants for the breach of implied warranty and has given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

38. As a direct result of the breach of implied warranty or merchantability by Defendants, Plaintiffs were damaged as set forth in Paragraph 29.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as a jury may award, and their costs, as well as reasonable attorney fees.

## COUNT FOUR
## BREACH OF FITNESS FOR PARTICULAR PURPOSE

39. Plaintiffs incorporate by reference all of the preceding paragraphs.

40. Defendants breached the implied warranty in that the manufactured home was not merchantable, was not fit for ordinary purposes, and was not built as represented or ordered.

41. Plaintiffs provided notice to Defendants for the breach of fitness for particular purpose and has given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

42. As a direct result of the breach of fitness for particular purpose by Defendants, Plaintiffs were damaged as set forth in Paragraph 29.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as a jury may award, and their costs, as well as reasonable attorney fees.

## COUNT FIVE
## BREACH OF WARRANTY OF HABITABILITY

43. Plaintiffs incorporate by reference all of the preceding paragraphs.

44. Defendants breached the implied warranty in that the manufactured home was not merchantable, was not fit for ordinary purposes, and was not built as represented or ordered.

45. Plaintiffs provided notice to Defendants for the breach of warranty of habitability and have given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

46. As a direct result of the breach of warranty of habitability by Defendants, Plaintiffs were damaged as set forth in Paragraph 29.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as a jury may award, and their costs, as well as reasonable attorney fees.

## COUNT SIX
## NEGLIGENCE

47. Plaintiffs incorporate by reference all of the preceding paragraphs.

48. Defendants negligently manufactured, designed, built, and/or assembled the manufactured home which the Plaintiffs purchased from Defendants.

49. Defendants owed a duty to use due and ordinary care in the manufacture, design, building, and/or assembly of the manufactured home purchased by the Plaintiffs.

50. The Defendants breached the duty owed to the Plaintiffs by failing to use ordinary and due care in the manufacture, design, building, and/or assembly of the manufactured home which was purchased by the Plaintiffs.

51. As a direct and proximate result of the Defendants' negligence, Plaintiffs were damaged as set forth in Paragraph 29.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as a jury may award, and their costs, as well as reasonable attorney fees.

## COUNT SEVEN
## WANTON

52. Plaintiffs incorporate by reference all of the preceding paragraphs.

53. Plaintiffs allege Defendants are guilty of wanton construction of the manufactured home.

54. The workmanship and design are inferior, wantonly performed or done, leaving the manufactured home in a defective condition, thereby causing injury to the Plaintiffs.

55. As a direct and proximate result of the Defendants' wantonness, Plaintiffs were damaged as set forth in Paragraph 29.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as a jury may award, a separate amount as punitive damages, and their costs, as well as reasonable attorney fees.

## COUNT EIGHT
## UNJUST ENRICHMENT

56. Plaintiffs incorporate by reference all of the proceeding paragraphs.

57. Defendants, by its acts and omissions described herein, has wrongfully appropriated, retained or otherwise possessed funds that rightfully in justice and equity belong to Plaintiffs. Defendants have earned enormous profits from this deceptive act.

58. Defendants should be required to disgorge all sums (e.g. the money earned from this practice) received from Plaintiffs as a result of the illegal and improper manner in which they placed for use by consumers a product (the Plaintiffs' home) into a region in which they knew the home would become worthless. Plaintiffs are also entitled to pre-judgment interest.

## COUNT NINE
## FRAUDULENT CONCEALMENT

59. Plaintiffs incorporate by reference all of the preceding paragraphs.

60. Defendants failed to disclose the known defect (as set forth in the Background Facts) of the manufactured home to Plaintiffs in connection with the purchasing of the manufactured home.

61. The fraudulent concealment and omissions by Defendants were known and deliberate and were purposely designed to deceive Plaintiffs.

62. The concealment and omissions by Defendants were material in that Plaintiffs would not have purchased the manufactured home absent the concealment and omissions of material facts by Defendants. Plaintiffs reasonably believed that Defendants had accurately and adequately disclosed all material facts.

63. As a direct and proximate result of Defendants' fraudulent concealment and omissions, Plaintiffs were damaged as set forth in Paragraph 29.

64. Defendants fraudulent conduct was willful, wanton, and malicious, thereby entitling Plaintiffs to recover an amount to be determined at the trial of this action.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as deemed appropriate, a separate amount as punitive damages, and cost, as well as reasonable attorney fees.

## COUNT TEN
## ALABAMA EXTENDED MANUFACTURERS LIABILITY DOCTRINE

65. Plaintiffs incorporate by reference all of the preceding paragraphs.

66. Defendants manufactured the manufactured home and placed it in the stream of commerce where Plaintiffs ultimately purchased the manufactured home in July of 2004.

67. The manufactured home reached the Plaintiffs as the ultimate users or consumers without any substantial change in its condition from the time it was manufactured by Defendants.

68. Plaintiffs used the manufactured home for its intended purpose, as a residence.

69. The manufactured home, when it reached the Plaintiffs, was in a defective condition and/or in a condition that was unreasonably dangerous to the Plaintiffs as the ultimate users or consumers.

70. As a direct and proximate result of Defendants placing a defective and/or unreasonably dangerous manufactured home in the stream of commerce, Plaintiffs were damaged as set forth in Paragraph 29.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as a jury may award, a separate amount as punitive damages, and their costs, as well as reasonable attorney fees.

/s/ C. Gibson Vance
C. Gibson Vance (ASB-1923-N77C)

### CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following.

Gregory S. Ritchey, Esquire
Richard S. Walker, Esquire
Ritchey & Ritchey, P.A.
P.O. Drawer 590069
Birmingham, Alabama 35259-0069
greg@ritcheylaw.com
richard@ritcheylaw.com

/s/ C. Gibson Vance
OF COUNSEL